UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE ) | | |
| 201 FOREST STREET, LLC, ) | | Chapter 11 |
| 219 FOREST STREET, LLC, ) | | |
| ) | | Case No. 07-42296-JBR |
| Debtors ) | | Case No. 07-41768-JBR |
| ) | | |
| ) | | Jointly Administered |
| ) | | |

## MEMORANDUM OF DECISION

This matter came before the Court for hearing on the Motion of the Debtor, 201 Forest Street LLC ("201 Forest"), requesting the entry of an order discharging a mortgage that LBM Financial LLC ("LBM") holds on 201 Forest's real property pursuant to M.G.L. ch. 260, § 33 (the "Obsolete Mortgages Statute") [Docket # 170], LBM's opposition thereto [Docket # 175], and 201 Forest's reply to LBM's opposition [Docket #177]. At the conclusion of the hearing, the Court took the matter under advisement and the parties have since submitted supplemental memoranda. [Docket # # 183, 187].

## FACTS

The relevant facts are few and are not in dispute. 201 Forest granted LBM a mortgage on its real property in 2002 (the "Mortgage"). The Mortgage is dated December 4, 2002 and it has a stated "Term" of "One (1) Year."[1] As such, the term of the Mortgage expired on December 4, 2003. The Mortgage was recorded on December 31, 2002. On June 19, 2007, 201 Forest filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.

---

[1] See 201 Forest's Ex. A.

On January 14, 2009, 201 Forest sent a letter to LBM requesting that it execute a discharge of the Mortgage, citing the Obsolete Mortgages Statute as grounds therefore. Two days later, on January 16, 2009, LBM recorded an "affidavit," purporting to extend the Term of the Mortgage in compliance with the Obsolete Mortgages Statute. LBM has rebuffed 201 Forest's request that it execute a discharge of the Mortgage.

**POSITIONS OF THE PARTIES**

201 Forest argues that a plain reading of the Obsolete Mortgages Statute compels the conclusion that the Mortgage was discharged on December 5, 2008 by operation of law. 201 Forest accurately states that the Obsolete Mortgages Statute provides that a mortgage with a stated term "shall be considered discharged for all purposes" unless "an *extension* of the mortgage, or an *acknowledgement* or *affidavit* that the mortgage is not satisfied" is recorded within 5 years after the expiration of the "stated" term. M.G.L. ch. 260, § 33 (emphasis added). As such, 201 Forest asserts that the Mortgage was discharged by operation of the Obsolete Mortgages Statute on December 5, 2008[2] because LBM failed to record an extension, acknowledgment, or affidavit within five years after the expiration of the stated Term.

LBM makes five arguments in opposition to 201 Forest's motion. First, LBM argues that the Obsolete Mortgages Statute is only intended to apply to defunct or inactive mortgages, and is thus inapplicable to the instant facts because LBM "sought" to foreclose on the Mortgage and 201 Forest was aware of that fact. Second, LBM argues that 201 Forest is estopped from claiming that the Mortgage is discharged under the Obsolete Mortgages Statute. Third, LBM argues that its affidavit, recorded on January 16, 2009, was timely under the requirements set forth in the Obsolete Mortgages Statute. Next, LBM argues that section 108(c) of the

---

[2] *See infra* pp. 7-10.

2

Bankruptcy Code preserves the Mortgage and suspends its right to foreclose on the real property until 30 days after the termination of the automatic stay. Finally, LBM argues that 201 Forest's bankruptcy petition "fixed" the Mortgage and LBM's rights thereunder.

## DISCUSSION

The Obsolete Mortgages statute provides, in relevant part, that

> A power of sale in any mortgage of real estate shall not be exercised and an entry shall not be made nor possession taken nor proceeding begun for foreclosure of any such mortgage after the expiration of, . . . *in the case of a mortgage in which the term or maturity date of the mortgage is stated, 5 years from the expiration of the term or from the maturity date, unless an extension of the mortgage, or an acknowledgment or affidavit that the mortgage is not satisfied, is recorded before the expiration of such period.* . . . The period shall not be extended by reason of non-residence or disability of any person interested in the mortgage or the real estate, or by any partial payment, agreement, extension, acknowledgment, affidavit or other action not meeting the requirements of this section and sections 34 and 35. *Upon the expiration of the period provided herein, the mortgage shall be considered discharged for all purposes without the necessity of further action by the owner of the equity of redemption or any other persons having an interest in the mortgaged property* and, in the case of registered land, upon the payment of the fee for the recording of a discharge, the mortgage shall be marked as discharged on the relevant memorandum of encumbrances in the same manner as for any other mortgage duly discharged.

M.G.L. ch. 260, § 33 (emphasis added).

The Court must interpret the Obsolete Mortgages Statute according to its plain terms unless doing so would produce an absurd result. *In re Rudler*, 388 B.R. 433, 439 (B.A.P. 1st Cir. 2008); *United States v. Vest*, 639 F. Supp. 899, 908 (D. Mass. 1986) ("If a plain meaning is disclosed by reading the text of the statute, and the application of that meaning does not produce results that are absurd or at variance with the policy of the enactment as a whole, that ends the inquiry.") (internal quotations omitted). The plain terms of the Obsolete Mortgages Statute impose an affirmative obligation upon mortgagees to record an "extension of the mortgage, or an

3

acknowledgment or affidavit that the mortgage is not satisfied" within five years after the expiration of the stated term of the mortgage. *See* M.G.L. ch. 260, § 33. Absent the timely recordation of such an extension, acknowledgment, or affidavit, the "mortgage shall be considered discharged for all purposes without the necessity of further action." *Id.*

The instant Mortgage is dated December 4, 2002 and has a stated term of one year. Accordingly, the term of the Mortgage expired on December 4, 2003. Pursuant to the Obsolete Mortgages Statute, LBM had five years from December 4, 2003, that is until December 4, 2008, to record an extension, acknowledgment, or affidavit if it wished to preserve the Mortgage and could have recorded such an extension, acknowledgment, or affidavit at *anytime* within that five year period. It is undisputed that LBM's January 16, 2009 affidavit was not recorded within five years after the expiration of the term stated in the Mortgage. Consequently, a straightforward application of the Obsolete Mortgages Statute compels the Court to initially conclude that the Mortgage has been "discharged for all purposes" by operation of law. Before so ruling, however, the Court will first consider each of LBM's arguments in turn.

<u>Does the Obsolete Mortgages Statute Apply to the Instant Facts?</u>

LBM argues that the Obsolete Mortgages Statute does not apply to the instant facts because it is only intended to apply in situations where mortgages are "defunct or inactive." LBM states that it "sought" to exercise its power of sale long before the statutory five year period expired but was ultimately stayed from doing so because of 201 Forest's bankruptcy filing, and posits that the Obsolete Mortgages Statute does not apply in such a situation. Further, LBM states that 201 Forest should not be provided with the protections of the statute because it was aware of LBM's efforts to exercise its power of sale long before the expiration of the five year period.

4

The language of the Obsolete Mortgages Statute is unambiguous and contains no exceptions. A mortgagee's actions, short of timely recording an appropriate document, are ineffective to extend an expired mortgage. Had the legislature intended the Obsolete Mortgages Statute to have a more narrow application, as LBM argues, it was certainly capable of drafting the statute accordingly. *Cf.* M.G.L. ch. 183, § 4 (recording statute provides that unrecorded conveyances are "not valid as against any person, *except* the grantor or lessor, his heirs and devisees and persons having actual notice of it . . . .") (emphasis added); M.G.L. 183, § 58 ("Every instrument passing title to real estate abutting a way, whether public or private, watercourse, wall, fence or other similar linear monument, shall be construed to include any fee interest of the grantor in such way, watercourse or monument, *unless* [*inter alia*] . . . the instrument evidences a different intent by an express exception or reservation and not alone bounding by a side line.") (emphasis added); M.G.L. ch. 175, § 132 (providing that life insurance policies that have "been in force during the lifetime of the insured for a period of two years from its date of issue" shall be "incontestable . . . *except* for [*inter alia*] non-payment of premiums or violation of the conditions of the policy . . . .") (emphasis added). Rather than including an exception or other limiting language, however, the legislature drafted the Obsolete Mortgages Statute in a manner which reveals that it intended the statute to uniformly apply, without exception, when a mortgagee fails to timely record an extension, acknowledgment or affidavit:

> A power of sale in any mortgage of real estate shall not be exercised . . . in the case of a mortgage in which the term or maturity date of the mortgage is stated, 5 years from the expiration of the term or from the maturity date, *unless* an extension of the mortgage, or an acknowledgment or affidavit that the mortgage is not satisfied, is recorded before the expiration of such period. . . . Upon the expiration of the period provided herein, the mortgage shall be considered discharged *for all purposes* . . . .

M.G.L. ch. 260, § 33 (emphasis added).

Notwithstanding the unambiguous language of the Obsolete Mortgages Statute, LBM cites to *Housman v. LBM Financial, LLC*, No. 09-391252 (Land Ct. Jan. 16, 2009) (transcript of hearing on Pls.' Motion for Preliminary Injunction), in support of its argument that the Obsolete Mortgages Statute does not apply to the instant facts. LBM points to the language in *Housman* where the Land Court stated that the Obsolete Mortgages Statute is not "intended to cover a situation such as this one, in which there is indisputably actual knowledge on the part of the holder of record title here of the recent execution, recording and pendency of a mortgage held by [the mortgagee] at the time of acquisition of title . . . ." *Housman*, at p. 82. LBM asserts that this language compels the conclusion that the Obsolete Mortgages Statute does not apply here because 201 Forest was aware that LBM was seeking to exercise its power of sale prior to the expiration of the time set forth in the statute. The Court disagrees as the quoted language was, at best, dicta as the Land Court based its decision on the fact that

> [T]he recording of the order of notice in the chain of title to the report in the Dedham Registry serves as a sufficient compliance with the requirements of [the Obsolete Mortgages Statute], to constitute the *statutory equivalent of the affidavit* which has the effect under that statute of deferring the cessation of the right to exercise the power of sale and other remedies under the mortgage.

*Housman*, at p. 83.

Here, it is undisputed that LBM failed to record anything that could be deemed the "statutory equivalent" of an affidavit by the December 4, 2008 deadline. Furthermore, the Court is hesitant to rely on *Housman* as it was not a final decision on the merits, but merely a preliminary oral decision denying a request for an injunction. *Housman* is neither precedent for the proposition cited by LBM nor convincing in its analysis.

To the extent that LBM believes that the Mortgage should not be discharged by operation of the statute because it "sought" to exercise its power of sale, the Land Court had previously

6

rejected a similar argument. *See Wolfberg v. Spitz*, 2008 WL 2345016, at *4 (Land Ct. 2008) (finding that mortgage was discharged by operation of the Obsolete Mortgages Statute notwithstanding mortgagee's argument that "the Mortgage cannot be discharged under G.L. c. 260, § 33 because of his *acts* of acknowledgment of the Mortgage.") (emphasis added). As such, the Court concludes that the Obsolete Mortgages Statute applies to the instant facts.

Estoppel

LBM argues that 201 Forest should be estopped from arguing that the Obsolete Mortgages Statute discharged the Mortgage because 201 Forest did not include this argument in the adversary proceeding[3] wherein 201 Forest argued that the guaranty secured by the Mortgage was void on the grounds of misrepresentation, fraud, *etc.* LBM avers that 201 Forest's claims regarding the Mortgage were "fixed and litigated" in the adversary proceeding and the Court should rule that 201 Forest is now estopped from raising the Obsolete Mortgages Statute. The Court disagrees with LBM's argument for one very significant reason: the Obsolete Mortgages Statute argument did not ripen until December 5, 2008 which was twenty-eight days *after* the trial of the adversary proceeding was completed.[4] As the Obsolete Mortgages Statute argument was not ripe by the time the trial of the adversary proceeding was completed, much less the time that the adversary complaint was filed, the Court concludes that 201 Forest is not estopped from bringing the instant motion.

Was LBM's Affdavit Timely?

LBM contends that even if the Obsolete Mortgages Statute applies, its January 16, 2009 affidavit was timely recorded. First, LBM argues that, for purposes of the Obsolete Mortgages

---

[3] *See* 201 Forest Street, LLC, et al. v. LBM Financial LLC, et al., Adversary Proceeding Case No. 07-4097. [Docket #1, Pls.' Obj. to Claim and Counterclaims, Count VIII].
[4] The final day of trial was held on November 7, 2008.

7

Statute, the expiration date of the Mortgage is December 20, 2003 or December 31, 2003. LBM asserts that December 20, 2003 or December 31, 2003 is the controlling date because the parties' testimony in the adversary proceeding revealed that the maturity date of the *note* secured by the Mortgage was actually somewhere between December 20, 2003 and December 31, 2003. The Court disagrees with LBM's argument that the maturity date of the note controls as the Obsolete Mortgages Statute clearly states that an extension, acknowledgment, or affidavit must be filed within five years from the expiration of "the term or maturity date of the *mortgage*." M.G.L. ch. 260, § 33 (emphasis added). Nowhere does the statute mention the term or maturity date of the note. The statute's utility of discharging mortgages automatically "without the necessity of further action," would be significantly frustrated if parties were permitted to come forward with collateral evidence purporting to show that the term or maturity date of the mortgage was something other than what is set forth in the recorded instrument.

Assuming, arguendo, that LBM is correct on its point that the maturity date of the underlying note is what controls the application of the Obsolete Mortgages Statute, its deadline to file the extension, acknowledgement, or affidavit would be, using LBM's dates, at the latest, December 31, 2008. As such, the January 16, 2009 affidavit would still be untimely. To get over this hurdle, LBM argues that section 362(b)(3) of the Bankruptcy Code gave it an additional 30 days, or until January 31, 2009, to file the extension, acknowledgment, or affidavit.

Section 362(b)(3) provides, in relevant part, that the automatic stay does not apply to "any act to perfect, or to maintain or continue the perfection of, an interest in property . . . to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title." Section 547(e)(2)(A) provides that "for purposes of this [Preferences] section . . . a transfer is made- (A) at the time such transfer takes effect between the transferor and the

8

transferee, if such transfer is perfected at, or within 30 days after, such time . . . ." LBM posits that section 362(b)(3)'s reference to section 547(e)(2)(A) gave it an additional 30 days to record an extension, acknowledgment, or affidavit required by the Obsolete Mortgages Statute. LBM did not cite to a single case that supports this interpretation of section 362(b)(3) nor is the Court aware of any case that supports LBM's interpretation.

Reading the two sections together, section 362(b)(3)'s reference to section 547(e)(2)(A) sets forth a thirty day window within which a creditor may perfect, maintain, or continue the perfection of a security interest in property *without violating the automatic stay*; it does not, however, provide an extension of time to otherwise comply with a nonbankruptcy statutory deadline to record a continuation of a security interest or mortgage. *See In re Chase*, 2000 WL 33712297, at *9 (Bankr. D. Idaho 2000) ("Under Section 362(b)(3), the automatic stay does not prohibit the perfection of an interest in property if such perfection occurs within [thirty][5] days as provided by Section 547(e)(2)(A)"); *In re Planned Protective Svcs., Inc.*, 130 B.R. 94, 98 (Bankr. C.D. Cal. 1991) ("[T]he post-petition recordation of a lien interest generally would be a violation of the automatic stay. However, § 362(b)(3) provides an exception for acts of perfection which are authorized under . . . 547(e)(2)(A)") (footnote omitted); *cf. In re Millivision, Inc.*, 331 B.R. 515, 522-23 (Bankr. D. Mass. 2005) (holding that the "automatic stay exception under § 362(b)(3)" did not "override" the trustee's § 544(a) strong arm powers). In other words, if 201 Forest had filed for bankruptcy two days after it gave LBM the Mortgage, LBM would have been free to record that Mortgage until January 3, 2003 without violating the automatic stay. *See* 3 COLLIER'S ON BANKRUPTCY, § 362.05[4], at 362-55 (15th ed. 2008) ("[362(b)(3)] suggests that the creditor should be able to perfect its interest even after the commencement of

---

[5] *Chase* was a Pre-BAPCA case when the grace period set forth in section 547(e)(2)(A) was ten days. BAPCA amended section 547(e)(2)(A) to increase the grace period to thirty days.

the case, as long as the interest is perfected before the expiration of the 30-day period."). As section 362(b)(3) serves the limited purpose of providing an exception to the automatic stay, and does not extend the time to comply with nonbankruptcy statutory deadlines, LBM's reliance on section 362(b)(3) is without merit. The Obsolete Mortgages Statute required LBM to file an extension, acknowledgment, or affidavit by December 4, 2008 (or at the latest December 31, 2008) and section 362(b)(3) does not operate to extend that nonbankruptcy statutory deadline.

<u>Does section 108(c) preserve the Mortgage and suspend LBM's right to foreclose?</u>

Section 108(c) of the Bankruptcy Code provides that

> Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for *commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor*, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of— (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. § 108(c) (emphasis added).

The purpose of section 108(c) is to prevent a debtor from gaining an "unfair advantage over a claimant by . . . remain[ing] under the protection of the automatic stay until the limitation period governing the claimant's action had expired . . . ." *In re Morton*, 866 F.2d 561, 566 (2d Cir. 1989). To avoid this inequity, section 108(c) gives a claimant "stayed from commencing or continuing an action against the debtor because of the bankruptcy case" 30 days after the termination or expiration of the automatic stay to commence or continue his civil action. *See id.* (internal quotations omitted). LBM contends that section 108(c) preserves its Mortgage and suspends its right to foreclose until thirty days after termination of the automatic stay.

First, LBM states that several cases have interpreted section 108(c) to preserve enforcement rights against a debtor and the debtor's property under liens even when the applicable state law required the lienholder to take some action to renew or continue perfection of its lien during the pendency of the bankruptcy case. Each of the cases that LBM cites are distinguishable from the instant facts. In *In re Morton*, 866 F.2d at 566, and *In re Spirtos*, 221 F.3d 1079, 1080-81 (9th Cir. 2000), the Second and Ninth Circuits held that the time to renew judgment liens on debtors' property was tolled by section 108(c) for thirty days after notice of termination of the automatic stay. However, the claimants in *Morton* and *Spirtos* had successfully prosecuted civil actions to judgment, and thus, the renewal of their judgment liens were "continuations" of "civil action[s]" within the meaning of section 108(c).[6] Here, the requirement to file an extension, acknowledgment, or affidavit under the Obsolete Mortgages Statute is not the continuation of a civil action.

LBM also cites *In re Hunters Run Ltd. P'ship*, 875 F.2d 1425, 1427 (9th Cir. 1989), and *In re Worldcom, Inc.*, 362 B.R. 96, 108-09 (Bankr. S.D.N.Y. 2007), for the proposition that section 108(c) extends the period of time that mechanic's liens may be enforced for thirty days after notice of termination of the automatic stay. *Hunters Run* and *Worldcom* are inapposite because the applicable state statutes provided that those liens would have expired unless enforcement actions were timely filed in the appropriate courts. The debtors' bankruptcy cases stayed the claimants from initiating actions to enforce their mechanic's liens, thus implicating the policy of section 108(c). Those courts explained that *enforcing* a lien is not "an act to maintain or continue perfection of a lien" excepted from the automatic stay. *Worldcom*, 362

---

[6] LBM also cites *In re Mills*, 32 B.R. 507 (Bankr. D. Me. 1983). In *In re Mills*, the bankruptcy court held that section 108(c) tolled the time to extend a real estate attachment for thirty days after notice of termination of the automatic stay. Like *Morton* and *Spirtos*, *Mills* is distinguishable because the extension of the real estate attachment was the continuation of a civil action.

11

B.R. at 108; *see also In re Hunters Run Ltd. P'ship*, 875 F.2d at 1428.[7] Meanwhile, LBM lost its right to foreclose on the Mortgage because it failed to take necessary action which it was *not stayed* from taking; namely, recording an extension, acknowledgment, or affidavit. *See In re 229 Main Street P'ship*, 262 F.3d 1, 3 (1st Cir. 2001) (explaining that the automatic stay is not applicable to acts to maintain or continue perfection of liens). In short, while section 108(c) may extend the period of time to bring a foreclosure action, *see Hunters Run*, 875 F.2d at 1429, LBM no longer has the right to foreclose because it failed to take action that it was not stayed from taking, not because 201 Forest's bankruptcy case prevented it from enforcing the Mortgage. Consequently, section 108(c) is of no assistance to LBM because it has no right to commence or continue a civil action with respect to the Mortgage.

<u>Did 201 Forest's bankruptcy petition "fix" the Mortgage?</u>

Finally, LBM asserts that the Obsolete Mortgages Statute does not affect the validity of the Mortgage because 201 Forest's bankruptcy petition "fixed" the Mortgage and LBM's rights thereunder. The Court notes that section 362(b)(3) of the Bankruptcy Code expressly excepts acts to "perfect, or to maintain or continue the perfection of an interest in property" from the automatic stay. The extension, acknowledgment, or affidavit required to be recorded by the Obsolete Mortgages Statute unquestionably falls into this category. If LBM's argument that 201 Forest's bankruptcy petition "fixed" the Mortgage, exempting it from complying with the Obsolete Mortgages Statute, were correct, section 362(b)(3) would be superfluous because lienholders and mortgagees would not need to comply with certain nonbankruptcy laws that require the recordation of documents to "continue the perfection of [] interest[s] in property."

---

[7] *See also In re Premier Hotel Dev. Group*, 270 B.R. 234, 242 (Bankr. E.D. Tenn. 2001) ("Acts to enforce a lien, in contrast to the perfection actions which fall within 11 U.S.C. § 546(b), are stayed by the bankruptcy filing and, thus, any time periods for enforcement are tolled by § 108(c) of the Bankruptcy Code.").

The Court is required to interpret the Bankruptcy Code in a manner that "gives meaning and effect" to all of the "statutory words [and] phrases." *In re Kibbe*, 361 B.R. 302, 313-14 (B.A.P. 1st Cir. 2007). As such, the Court does not accept LBM's argument as it would render section 362(b)(3) meaningless.

LBM states that many courts have held that secured claims that expire after the commencement of a bankruptcy case maintain their secured status vis-à-vis the trustee or debtor in possession. LBM principally relies on *Gen. Elec. Credit Corp. v. Nardulli & Sons, Inc.*, 836 F.2d 184 (3d Cir. 1988) ("*Nardulli*").

In *Nardulli*, after the debtor filed a voluntary Chapter 11 petition, it moved its place of business to a new county in Pennsylvania and moved some of its equipment to Indiana. Under Pennsylvania's and Indiana's respective versions of the Uniform Commercial Code (the "UCC"), when collateral subject to a security interest perfected in another jurisdiction is moved into Pennsylvania or Indiana new financing statements must be filed within four months. *Nardulli*, 836 F.2d at 191. The claimants in *Nardulli* had properly filed financing statements at the commencement of the debtor's bankruptcy case because the debtor did not move its business, nor its equipment until *after* the bankruptcy petition was filed. *Id.* at 186, 189. Pennsylvania's UCC provided that a security interest remains perfected until sixty days after the "termination" of insolvency proceedings (the "grace period"). *Id.* For purposes of calculating this grace period, insolvency proceedings are deemed to terminate upon confirmation of a plan of reorganization, or on the effective date or consummation date of the plan, if provided for in the plan. *Id.* at 190. The claimants failed to file new financing statements within sixty days after the termination of the bankruptcy proceeding (the plan's consummation date). *Id.* The debtor argued that this failure divested the claimants of their liens. *Id.* at 189.

13

The Third Circuit disagreed with the debtor and pointed out that the purpose of the UCC's filing requirement is "to put future creditors and subsequent purchasers of the collateral on notice of the lien." *Id.* at 190. The Third Circuit held that since the debtor is "not a subsequent purchaser or creditor . . . it may not take advantage of [the claimants'] failure to file." *Id.* The fact that the debtor was not a subsequent purchaser or creditor, however, was not the sole basis for the Third Circuit's decision as the court went on to state that "[i]n reaching this decision we *rely* on the fact that Nardulli entered into court-approved stipulations with both [claimants] that affirmed the validity of their perfected security interests in certain equipment and authorized granting security interests in other equipment." *Id.* (emphasis added). The Third Circuit concluded that the claimants' security interests were valid as between themselves and the debtor because the UCC's filing requirements "were enacted to protect future creditors or purchasers," and not the debtor. *Id.* at 191.

The instant facts are distinguishable from *Nardulli*. First, while the UCC was the applicable law in *Nardulli*, the Court is bound by the Obsolete Mortgages Statute in this matter. In *Nardulli*, the Third Circuit primarily based its decision on its statement that the UCC's filing requirements are only intended to protect subsequent purchasers or future creditors. Unlike the limited purpose behind the UCC's filing requirements, however, it appears that the Obsolete Mortgages Statute at issue here has a broader purpose. The statute reads that upon the expiration of certain deadlines set forth in the statute, "*the mortgage shall be considered discharged for all purposes without the necessity of further action by the owner of the equity of redemption or any other persons having an interest in the mortgaged property . . .*" M.G.L. ch. 260 § 33 (emphasis added). The Court believes that the legislature included this broad-sweeping language because it intended the Obsolete Mortgages Statute to *automatically* discharge mortgages after the

14

expiration of certain deadlines irrespective of who invokes the protections of the statute. The Land Court has confirmed this interpretation as it has found for an original mortgagor on his count seeking a discharge of his mortgage brought pursuant to the Obsolete Mortgages Statute. *Wolfberg v. Spitz*, 2008 WL 2345016, at *2, *4 (Mass. Land Ct. 2008).

The Third Circuit also based its decision, in part, on the fact that the debtor "affirmed the validity" of the claimants' "perfected security interests" and "authorized granting security interests in other equipment." Here, there has been no allegation by LBM that 201 Forest has affirmed the validity of the Mortgage. In fact, 201 Forest has affirmatively stated that it is challenging the validity of the Mortgage in previous pleadings filed with this Court. *See* Cash Collateral Order, ¶ F, Docket # 126 ("201 Forest, with its affiliate, 219 Forest LLC ("219 Forest"), have challenged the liens asserted by LBM against the Property."); *see also* Chapter 11 Plan of Reorganization, § 3.1, Docket # 82 ("Class 2- LBM Secured Claim. Class 2 shall consist of the Secured Claim of LBM, *if any*, against 201 Forest.") (emphasis added); *Veg-Mix, Inc. v. U.S. Dep't of Agric.*, 832 F.2d 601, 607 (D.C. Cir. 1987) ("Courts may take judicial notice of official court records, including bankruptcy pleadings.").

As the Court interprets the Obsolete Mortgages Statute to be a self-executing statute, *see Edmond v. Draymore*, 2009 WL 74148, at *4 (Mass. Land Ct. 2009) ("It is well to note that that the relevant language in § 33 is essentially self-executing. . . . At the expiration of th[e] period [set forth in the statute], the mortgage is deemed discharged as a matter of law."), with a broader purpose than the UCC's filing requirements at issue in *Nardulli*, and because 201 Forest has affirmatively challenged LBM's liens, LBM's reliance on *Nardulli* is misplaced. Accordingly, the Court concludes that the Mortgage was not "fixed" by 201 Forest's bankruptcy filing and the Obsolete Mortgages Statute has discharged the Mortgage.

Therefore, the Court finds for the Debtor, 201 Forest, and determines that the Mortgage is discharged.

A separate order will issue.

Dated: April 8, 2009

By the Court,

*Joel B. Rosenthal*
Joel B. Rosenthal
United States Bankruptcy Judge