Lane loan to Fiorillo and Krowel if they disclose the fact that defendant Massad was paid

$35,000 at the closing.

178.    On or about August 6, 2004, defendant Massad deposited or caused to be deposited the

$35,000 check that he obtained from Krowel into defendant Commerce Bank account

#20010975, the "David G. Massad, Special Account."

179.    On or about March 16, 2006, defendant Commerce Bank mailed Krowel a letter stating

defendant Commerce Bank was missing a signed copy of application for the home equity

loan Krowel received on July 26, 2004, and requested Krowel to sign an enclosed home

equity loan application form.  Inasmuch as Krowel had never wanted nor applied for such a

loan, she refused.

### The Defendants Actions Following the June 2006 Lawsuits by Fiorillo and Krowel

180.    On or about June 1, 2006, Krowel filed a civil action in Worcester Superior Court

against defendant LBM Financial, "CIV 06-1149-C", to prevent foreclosure on the 249

Lincoln Street property.

181.    On or about June 1, 2006, the Court granted Krowel a temporary restraining order

preventing defendant LBM Financial's scheduled foreclosure sale.

182.    On or about June 1, 2006, defendant Mallegni called Fiorillo and demanded that the

lawsuit against defendant LBM Financial be settled or defendant Mallegni would have

defendant Massad begin foreclosure proceedings on Fiorillo and Krowel's other properties,

including their family home.

183.    On or about June 5, 2006, defendant Gamewell Realty mailed a letter to Fiorillo

informing him that defendant Gamewell intended to foreclose on the Airline Lewis loan.

184.   On or about June 7, 2006, defendant Massad caused Commerce Bank to mail a "30 Day
Demand Notice" to Krowel which falsely stated that Krowel was in default for non-payment
and demanding the repayment of the entire unpaid principal of $326,021.19 within 30 days.

185.   On or about June 21, 2006, Fiorillo filed a civil action in Worcester Superior Court
against Gamewell Realty and Massad, "CA NO. 2006-1311-C", ("Gamewell Case") based
upon actions taken by defendants Massad, Gamewell and others in connection with the
Airline Lewis loan.

186.   On or about June 22, 2006, defendant Massad contacted Fiorillo by telephone and
instructed him to settle the Gamewell Case or he (Massad) would have Commerce Bank
foreclose on Fiorillo's personal residence.  Massad told Fiorillo, "I'm the boss and I can call
that note at any time, for any reason.  Now settle the fucking case before I fucking gotta hurt
you!"

187.   On or about July 5, 2006, an article was published in Worcester Magazine detailing
various legal battles between Fiorillo and defendant Massad.  Thereafter, other borrowers
contacted the Fiorillos and told them of their experiences with the defendants and their
fraudulent loans and collection activities.

188.   On or about July 6, 2006, defendant Massad telephonically contacted Fiorillo and told
him that if he (Fiorillo) spoke to the press or other borrowers again, defendant Massad would
have Fiorillo killed.  Specifically, defendant Massad stated to Fiorillo, "If you talk to the
press again, I will make sure it's the second to last time someone reads your name in the
paper.  The next time it will end up in the obituaries.  Do you understand me son?  Now call

your attorney and deed Airline Lewis over to me or I am going to end this once and for all. Do not fuck with me."

189.    On or about June 27, 2006, Fiorillo caused Shrewsbury Street Development Companies to file bankruptcy case #06-41109 to receive protection from the Court's automatic stay protections to prevent defendant Gamewell from attempting to foreclose on the property based upon a fraudulently inflated and usurious debt.

190.    On or about July 17, 2006, defendant Mallegni, in an effort to pressure Fiorillo to settle his lawsuits against defendants Mallegni and Massad, directed his attorney, Roy Bourgeois, to file an attachment in the amount of $330,000, against all property in Massachusetts in which Depietri held an interest. This attachment purportedly was filed to secure payment on the S&M Lawsuit judgment, despite the fact that, as both defendant Mallegni and his attorney Bourgeois knew, Depietri was not personally a defendant in the case and had no personal liability on the judgment and there was no ethical, legal or factually accurate basis for attorney Bourgeois to seek such an attachment.

191.    In or around July 2006, attorney Bourgeois informed at least two other individuals that the attachments were filed against Depietri in retaliation for Fiorillo's lawsuit against defendants Mallegni and LBM.

192.    In or around July 2006, defendant Mallegni told LaCourse to cease all work on projects owned by Fiorillo or Depietri. Defendant Mallegni told LaCourse, with respect to Depietri, "If Duddie [Massad] and I can squeeze Bob [Depietri] and threaten him with foreclosure, he will get Nicky [Fiorillo] to dismiss his suit."

50

193.   In or around July 2006, defendant Mallegni directed Kenneth LaCourse to place a

mechanic's lien on the Erie Avenue property owned by Fiorillo and Depietri.  LaCourse

initially refused telling defendant Mallegni that he was not owed any money for that

particular project.  Defendant Mallegni told him, "Kenny, if you do not lien that project, you

can forget about getting paid shit from me or Duddie [Massad]."

194.   On or about August 24, 2006, at the direction of defendant Mallegni, LaCourse placed a

mechanic's lien on the Erie Avenue project in the amount of $32,226.33.  As a result of this

cloud on the title, the Erie Avenue Trust lost at least one sale worth approximately $200,000.

195.   On or about August 17, 2006, defendant Gamewell, filed a Motion for Relief from the

Automatic Stay in which they stated Gamewell had a secured claim against the property

totaling in excess of $944,314.00.  This amount contained approximately $300,000 in

fraudulently inflated and usurious interest charges.

196.   On or about September 1, 2006, defendant Mallegni made an early morning phone call to

Depietri and threatened him to stop supporting Fiorillo's activities to develop the Airline

Lewis Building or else his various loans with defendants LBM Financial and Commerce

Bank would be foreclosed upon.  Specifically, Mallegni informed Depietri that unless he

distanced himself from Fiorillo, Depietri would have trouble with his Commerce Bank loan

on the Chase Building.  At that time, defendant Commerce Bank held a $3 million note and

mortgage on the Chase Building ("the Chase loan").  Depietri was a personal guarantor on

the Chase loan.

197.   On or about September 3, 2006, defendant Massad's Worcester associate made an

unannounced visit to Depietri's home and informed Depietri that defendant Massad wanted

Depietri to distance himself from Fiorillo and "back off" the Airline Lewis project.

198.   On or about September 6, 2006, Commerce Bank mailed Depietri a default and demand

letter demanding full and immediate repayment of the outstanding balance of over $2.6

million on the Chase loan and raising the interest rate from 7.5% to 11.5%.

199.   As a result of his receiving the default notice for the Chase loan and the visit to his home

by defendant Massad's Worcester associate, Depietri tried to persuade Fiorillo to settle his

differences with defendants Massad and Mallegni.

200.   On or about October 13, 2006, Fiorillo was forced to enter into a settlement agreement

with defendants Mallegni and LBM Financial regarding his June 2006 state lawsuit.

201.   On or about October 30, 2006, following the signing of the settlement agreement between

Fiorillo and defendants Mallegni and LBM Financial, a representative of Commerce Bank

notified Depietri that Commerce Bank was withdrawing its Notice of Default on the Chase

Building and reinstating his loan at the original rate of interest.

202.   On or about October 30, 2006, in connection with the Gamewell case, defendant Pamela

Massad filed an affidavit with the Court in which she stated that defendant Gamewell had

filed a Notice of Intent to charge usurious interest with the Massachusetts Attorney General's

Office in connection with the Airline Lewis loan, yet as of November 20, 2006, the

Massachusetts Attorney General's Office had no such notice on file.

203.   In or around the first week of December 2006, defendant Massad telephoned Fiorillo and

Krowel and again demanded that Fiorillo immediately deed over the Airline Lewis Property

52

to defendant Massad, otherwise defendant Massad would cause Commerce Bank to go

forward with the foreclosure on Fiorillo's personal residence. Defendant Massad further

threatened Fiorillo's physical safety. Specifically, defendant Massad told Fiorillo, "If you do

not come down to the Bank this fucking minute and sign the deed over to Airline Lewis, I

will take my fucking bank and foreclose on you and your fucking family! I'll put you, your

fucking wife and your fucking kids in a fucking shelter! Fuck you! You're dead kid!

You're dead!"

204.   In or around the first week of December 2006, following the call from defendant Massad

to Fiorillo and Krowel, Commerce Bank sent a Notice of Foreclosure to Fiorillo and Krowel

demanding a full payoff of the loan on their personal residence.

205.   On or about January 16, 2007, Fiorillo and SSDC filed a lawsuit against defendant

Gamewell in the United States District Court in Worcester. Depietri filed an affidavit in

support of Fiorillo's claims, and detailing defendant Massad's attempted extortion of Fiorillo

in connection with the Airline Lewis loan.

206.   On or about January 17, 2007, Depietri met with defendant Mallegni in Mallegni's office

to discuss various outstanding loans with defendant LBM Financial, including 219 Forest

and the Evergrass loan. During the course of this meeting, defendant Mallegni informed

Depietri that he and defendant Massad were very upset by Depietri's affidavit filed in

support of Fiorillo's lawsuit and he demanded a retraction. Depietri refused, explaining to

defendant Mallegni that the statements were all true. Defendant Mallegni then informed

Depietri that there was nothing more that he (Mallegni) could do with respect to Depietri's

loan and that defendant Massad had taken all of the loan files and given them to his attorneys.

207.   On or about January 18, 2007, defendant Mallegni caused defendant LBM Financial to make a demand on the Depietris for full an immediate payment on the $300,000 Evergrass note.

208.   Between August 29, 2005 and January 18, 2007, defendants Mallegni and LBM Financial had made no effort to call the Evergrass loan, nor did they attempt to collect monies from Evergrass.

209.   Between January 2007 and August 2007, defendant Mallegni, directly, and through defendant Norris offered on numerous occasions to forbear from foreclosing on the Depietri's home if they would, among other things, drop their support of Fiorillo's lawsuits against defendants Massad and Mallegni.  Depietri refused to drop his support of Fiorillo and, instead, pressed defendants Mallegni and LBM Financial to return monies they had obtained from him fraudulently on prior loans, including 219 Forest, Lyman Development, 230 Maple Street and Old Centre Village.

210.   In or around May 2007, defendant Mallegni caused defendant LBM Financial to institute foreclosure proceedings against the Depietris' family home.

211.   As of June 18, 2007, defendant LBM Financial fraudulently claimed to be owed $493,656.38 on the Evergrass Note, consisting of $300,000 in principal and $193,656.38 in accrued interest, fees and penalties.  This constituted an effective interest rate of approximately 47%. The Depietris refused to pay this usurious interest amount.

212.    On or about August 3, 2007, defendant LBM Financial held a foreclosure auction on the

Depietris' family home.

213.    From on or about January 16, 2007 through on or about April 26, 2007, defendant

Massad repeatedly threatened to direct Commerce Bank to hold a foreclosure auction on

Fiorillo's family home if Fiorillo did not settle the state and federal cases against defendants

Massad and Gamewell.

214.    On or about March 1, 2007, Fiorillo spoke with the attorney for defendant Gamewell.

During the course of that discussion, it was agreed that if Fiorillo would dismiss his state and

federal lawsuits against defendants Massad and Gamewell, defendant Commerce Bank

would suspend the foreclosure action against the Fiorillo and Krowel family home.

215.    In or around March, 2007, Fiorillo's father, Frank Fiorillo, informed defendant Massad

that he wished to purchase his son's home and requested that Commerce stay the foreclosure

proceedings.  Defendant Massad replied that he was willing to give Frank Fiorillo time to

arrange for the purchase of his son's home, on the condition that he could get Fiorillo to

settle his state and federal lawsuits against defendants Massad and Gamewell.

216.    On or about March 26, 2007, defendant Massad conducted a conference call with Frank

Fiorillo, Paul S. Lesniewski, a Senior Vice President of defendant Commerce Bank, and

Peter Favata, a mortgage broker for Frank Fiorillo.  During the course of this meeting,

defendant Massad agreed to postpone the foreclosure auction on Fiorillo's home.  At the

conclusion of this meeting, defendant Massad said to Frank Fiorillo, "Frank, now get your

son to settle his case against me and this can all go away."

217.   On or about March 26, 2007, immediately following the above-described conference call,

Howard D'Amico, an attorney for defendant Commerce Bank, sent a letter to the auctioneer

informing him that the auction had been postponed until April, 11, 2007.

218.   On or about April 16, 2007, defendant Massad telephoned Frank Fiorillo and asked him

if, "Nicky [Fiorillo] had signed the releases?"  Frank Fiorillo informed defendant Massad

that he had not yet been able to get his son to settle the lawsuits.  Defendant Massad then

threatened to proceed with the foreclosure auction and told Frank Fiorillo, "If this was

twenty years ago, your son would have been in the bottom of lake Quinsigamond.  The

games are over."

219.   On or about April 18, 2007, the date of the scheduled foreclosure auction, Fiorillo was

called by attorney Phillip Coppinger who stated that the auction could still be halted if

Fiorillo would sign settlement releases for the state and federal lawsuits.  He then faxed them

to Fiorillo, who refused to sign them.

220.   In or around June 2007, Fiorillo in order to avoid further risk to his family home paid off

his Commerce Bank Loan in the amount of $598,000.  This amount included over $19,500

in fraudulently assessed interest charges.

221.   On or about September 13, 2007, defendant LBM Financial mailed Depietri a notice of a

second foreclosure sale relating to the Depietris family home on North Pond Road.

222.   On September 25, 2007, the Depietris filed a motion to be added as party plaintiffs to an

amended complaint filed against the above-referenced defendants. *See* C.A. #07-40015-

FDS, ("the amended RICO complaint").

223.   On September 26, 2007, the day after the Depietris sought to join the amended RICO

complaint, defendant LBM Financial mailed Evergrass, Inc. and the Depietris, as guarantors,

a notice of foreclosure sale for the property and scheduled a public auction for Wednesday,

October 17, 2007 at 10:00 a.m.

224.   On or about September 26, 2007, in apparent further retaliation for the Depietris seeking

to join the amended RICO complaint, defendants LBM Financial and Mallegni filed two

separate actions in Massachusetts Superior Court.  The first, entitled *LBM Financial, LLC v.*

*Evergrass, Inc., Robert J. Depietri, Jr., et al.,* Docket No. MICV2007-03723, sought leave to

enforce the Evergrass loan and guaranty against the Depietris, including its fraudulently

inflated interest claim, and further sought to reach and apply the Depietris interest in twenty-

five separate entities, including several which were the subjects of the amended RICO

complaint.  In the second lawsuit, entitled, *Marcello Mallegni v. 57 East Main Street, Robert*

*J. Depietri, Jr., et. al.,* Docket No. MICV 2007-03736, defendant Mallegni alleged, among

other things that he was essentially unaware of the refinance of the 57 East Main Street

property, despite the fact that defendant LBM Financial was paid nearly $650,000 in loan

proceeds.

225.   On or about October 18, 2007, Depietri met with James Tavano, an associate of

defendant Massad.  During the course of this meeting Tavano told Depietri that he had

attended meetings with Massad and others and Depietri's name had "come up."  On

numerous occasions throughout the course of this conversation, Tavano told Depietri that he

should "just worry about [his] family" and "forget about helping anyone else," which was a

thinly veiled reference to Depietri's attempt to join Fiorillo's lawsuit and the fact that

Depietri had included defendant Massad in his own RICO lawsuit. Tavano further told

Depietri that defendant Massad had a lot of connections and "could make things happen if he

wanted them to." Tavano told Depietri that it only takes two or three people to lie about you

and then, "they come and take you away, destroy your life and what's your family going to

think then?" Finally, Tavano recounted to Depietri his association with several well-known

organized crime figures, and that he had heard about the February 1, 2006 meeting between

Fiorillo, defendant Massad and defendant Massad's Rhode Island Associate.

## COUNT I: CIVIL RICO (18 U.S.C. §1961 et seq.)

226.    The plaintiffs repeat and reiterate each and every allegation set forth above and

incorporate such allegations into this count.

227.    At all pertinent times, the defendants Massad, Pamela Massad, Mallegni, Norris,

Commerce Bank, Gamewell, Wolfpen and LBM Financial combined to form an "enterprise"

as that term is defined at 18 U.S.C. §1961(4) ("the Massad Enterprise"). Each of the

defendants were members and associates of the Massad Enterprise that were engaged in

fraudulent real estate transactions, and the procurement of fraudulent financing for such

transactions through mail fraud, bank fraud, bankruptcy fraud, loansharking, obstruction of

justice and extortion. The Massad Enterprise utilized its connection to legitimate banking

institutions to enrich its individual members. At all pertinent times the Massad Enterprise

was an organized crime group that operated in central Massachusetts and at all pertinent

times, it constituted a continuing unit for the common purpose of achieving the enterprise's

objectives.

228    At all pertinent times the Massad Enterprise was engaged in interstate commerce.

229    The Massad Enterprise is a group of individuals and corporations associated in fact,

although it is not a legal entity.  The means and methods utilized to conduct its organized

crime activity included a pattern of extortion, threats, intimidation, obstruction of justice,

economic duress, and coerced refinancing which had the effect of fraudulently transforming

conforming loans into usurious ones.  The unlawful actions of the defendants occurred on a

continuing basis from at least 1998 to the present.  The defendants have conspired to defraud

and extract large sums of money from the plaintiffs by engaging in the pattern of activity that

consists of numerous crimes as set forth below.

230.    The purpose of the enterprise was as follows:

    a.    to enrich its members;

    b.    to preserve, protect, and augment its financial power and leverage in central

        Massachusetts.

231.    Among the means and methods employed by the members and associates of the Massad

Enterprise in the conduct of the enterprise were the following:

    a.    members and associates conspired, committed and attempted to commit mail

        fraud and bank fraud through control of numerous lending institutions and

        companies involved in real estate transactions;

    b.    members and associates engaged in extortionate acts to enrich its members;

    c.    members and associates obstructed and attempted to obstruct justice to prevent

        victims of the Massad Enterprise from seeking redress in the courts.

232.    The individual members of the Massad Enterprise would cause the corporate members to

59

write loans to the plaintiffs and others.  When the loans were about to come due, the

defendants promised to extend these loans on the same or similar terms, lulling the plaintiffs

into a sense of false security.  At, or immediately prior to the loan closings, the defendants

then demanded: (1) additional and unexpected points and finance charges to make the loans;

(2) increased payoff amounts, sometimes in the hundreds of thousands of dollars; (3) that

closing documents be signed immediately at said closings or that the notes will be called and

the mortgages foreclosed, (4) cash payments to offset alleged debts entirely unrelated to the

loans at issue.  Finally, in at least two separate instances, defendants Mallegni and Massad

demanded an equity interest in a project as a last-minute condition of closing.  The

defendants' apparent intent throughout the history of said loans was to profit unlawfully from

said loans by purposefully hindering and delaying the plaintiffs' efforts to pay off their loans

so the defendants' could charge fraudulently inflated "default interest" and fees and/or to

utilize foreclosure proceedings and the threat of foreclosure proceedings to take the plaintiffs'

properties for less than market value.  In the words of defendant Mallegni, "that's how we

really make our money, default interest, late fees and points."

233.    In at least one instance, in or around September 2002, some or all of the defendants

extorted a debt from Fiorillo that was statutorily usurious, in violation of G.L. c. 271 §49 and

18 U.S.C. §1961(6).  Specifically, the debt (related to the Airline Lewis building and held in

the name of the Gamewell defendant) was in the amount of $575,000.00 of which

$212,000.00 was "pre-paid interest" to be charged in addition to interest 15%.  The funds

advanced were the sum of $363,000.00; the prepaid interest of $212,000.00 constituted an

effective interest rate of approximately 59% of the sums actually advanced, nearly three times

the maximum amount of twenty per cent authorized by G.L. c. 271 §49.

234.   One or more members of the Massad Enterprise, including defendants Massad, Pamela

Massad and Gamewell, persisted in efforts to collect this usurious debt.  Specifically, among

the racketeering acts, on or about May 3, 2006, defendant Pamela Massad mailed an

acceleration and Demand letter demanding payoff sums which constituted an effective annual

rate of 47%.

235.   The defendants jointly and severally have conducted the affairs of said Massad Enterprise

through the aforesaid pattern of racketeering activity.  Specific racketeering acts  undertaken

included but were not limited to:

a.  **Mail Fraud To Obtain $35,000.00 at the Closing of the 425 B Salisbury Loan**

In or around July, 2004, one or more of the defendants, including defendants Massad,

Pamela Massad, and Commerce Bank, having devised a scheme or artifice to defraud and to

obtain money or property by means of false and fraudulent pretenses, representations and

promises concerning material facts and matters, for the purpose of executing, attempting to

execute, and aiding and abetting the execution of, placed and caused to be placed in post offices

and authorized depositories for mail matter, matter and things to be sent by the United States

Postal Service or by private or commercial interstate carrier, and took and received therefrom,

such matter and things and knowingly caused to be delivered by the United States Postal Service

mail or by private or commercial interstate carrier according to the directions thereon such matter

and things, to wit: loan closing documents, including the HUD-1 Settlement Statement from the

425 B Salisbury Street loan, in violation of 18 U.S.C. §1341;

61

b.    **Mail Fraud in Connection with the 425 B Salisbury Loan**

On or about March 16, 2006, one or more of the defendants, including defendants

Massad, Pamela Massad, and Commerce Bank, having devised a scheme or artifice to defraud

and to obtain money or property by means of false and fraudulent pretenses representations and

promises concerning material facts and matters, for the purpose of executing, attempting to

execute, and aiding and abetting the execution of, placed and caused to be placed in post offices

and authorized depositories for mail matter, matter and things to be sent by the United States

Postal Service or by private or commercial interstate carrier, and took and received therefrom,

such matter and things and knowingly caused to be delivered by the United States Postal Service

mail or by private or commercial interstate carrier according to the directions thereon such matter

and things, to wit: a letter requesting Tracy Krowel to sign a home equity loan application form

to replace the "missing" application, allegedly made by Krowel in connection with the July 26,

2004 loan closing, in violation of 18 U.S.C. §1341;

c.    **Extortion to Obtain $35,000.000 at the Closing of the 425 B Salisbury Loan**

On or about July 26, 2004, one or more of the defendants, including defendants

Massad and Pamela Massad, did attempt, and aid and abet an attempt to obtain property from the

Fiorillos, to wit, a check payable to defendant Massad personally for $35,000, with their consent,

induced by wrongful use of actual or threatened force, violence, or fear including fear of

economic loss as well as of physical harm, and by such acts attempted to obtain property to

which they were not lawfully entitled all in violation of 18 U.S.C. §1951 and M.G.L. c. 275 §25;

d.      **Bank Fraud to Obtain $35,000.000 at the Closing of the 425 B Salisbury Loan**

On or about July 26, 2004, one or more of the defendants, including defendants

Massad and Pamela Massad, executed, attempted to execute, and aided and abetted the execution

of a scheme and artifice to obtain monies, funds, credits, assets, securities and other property

owned by, or under the custody and control of a financial institution by means of false and

fraudulent pretenses, representations and promises in that they fraudulently obtained a $35,000

check, payable to defendant Massad, from the proceeds of the 425B Salisbury Street loan, in

violation of 18 U.S.C. §1344;

e.      **Money Laundering in Connection with the $35,000.000 Illegally Obtained at the
Closing of the 425 B Salisbury Loan**

On or about August 6, 2004, one or more of the defendants, including defendants

Massad and Pamela Massad, knowingly engaged in, attempted to engage in, and aided and

abetted the engaging in and attempted engaging in a monetary transaction in criminally derived

property of a value greater than $10,000, which property was derived from a specified unlawful

activity, to wit: the depositing of the $35,000 check obtained through fraud and extortion at the

closing of the 425B Salisbury Street loan, in violation of 18 U.S.C. §1957;

f.      **Mail Fraud to Obtain Payment of over $63,000 in Fraudulently Inflated Interest in
Connection with the Old Center Realty Trust Loan**

On or about July 11, 2001, one or more of the defendants, including defendants LBM

Financial and Mallegni, having devised a scheme or artifice to defraud and to obtain money or

property by means of false and fraudulent pretenses, representations and promises concerning

material facts and matters, for the purpose of executing, attempting to execute, and aiding and

abetting the execution of, placed and caused to be placed in post offices and authorized

depositories for mail matter, matter and things to be sent by the United States Postal Service or

by private or commercial interstate carrier, and took and received therefrom, such matter and

things and knowingly caused to be delivered by the United States Postal Service mail or by

private or commercial interstate carrier according to the directions thereon such matter and

things, to wit: loan closing documents from the Old Centre Realty Trust loan, in violation of 18

U.S.C. §1341;

g.     **Mail Fraud to Obtain Payment of over $17,000 in Fraudulently Inflated Interest in
       Connection with the Old Center Realty Trust Loan**

       On or about June 4, 2002, one or more of the defendants, including defendants LBM

Financial and Mallegni, having devised and intending to devise a scheme or artifice to defraud

and to obtain money or property by means of false and fraudulent pretenses, representations and

promises concerning material facts and matters, for the purpose of executing, attempting to

execute, and aiding and abetting the execution of, placed and caused to be placed in post offices

and authorized depositories for mail matter, matter and things to be sent by the United States

Postal Service or by private or commercial interstate carrier, and took and received therefrom,

such matter and things and knowingly caused to be delivered by the United States Postal Service

mail or by private or commercial interstate carrier according to the directions thereon such matter

and things, to wit: loan closing documents from the Old Centre Realty Trust loan, in violation of

18 U.S.C. §1341;

h.     **Mail Fraud to Obtain Payment of over $900,000 in Fraudulently Inflated Interest in
       Connection with the 57 East Main Street Realty Trust Loan**

       On or about February 26, 2007, one or more of the defendants, including defendants

LBM Financial and Mallegni, having devised and intending to devise a scheme or artifice to

defraud and to obtain money or property by means of false and fraudulent pretenses,

representations and promises concerning material facts and matters, for the purpose of executing,

attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in

post offices and authorized depositories for mail matter, matter and things to be sent by the

United States Postal Service or by private or commercial interstate carrier, and took and received

therefrom, such matter and things and knowingly caused to be delivered by the United States

Postal Service mail or by private or commercial interstate carrier according to the directions

thereon such matter and things, to wit: a letter in which defendant LBM Financial claimed to be

owed approximately $1.1 million on the 57 East Main Street Realty Trust loan, in violation of 18

U.S.C. §1341;

i.   **Mail Fraud to Obtain Payment of over $350,000 in Fraudulently Inflated Interest in Connection with the 57 East Main Street Realty Trust Loan**

In or around April 2007, one or more of the defendants, including defendants LBM

Financial and Mallegni, having devised and intending to devise a scheme or artifice to defraud

and to obtain money or property by means of false and fraudulent pretenses, representations and

promises concerning material facts and matters, for the purpose of executing, attempting to

execute, and aiding and abetting the execution of, placed and caused to be placed in post offices

and authorized depositories for mail matter, matter and things to be sent by the United States

Postal Service or by private or commercial interstate carrier, and took and received therefrom,

such matter and things and knowingly caused to be delivered by the United States Postal Service

mail or by private or commercial interstate carrier according to the directions thereon such matter

and things, to wit: a letter in which defendant LBM Financial claimed to be owed approximately

$554,000 on the 57 East Main Street Realty Trust loan, in violation of 18 U.S.C. §1341;

j.    **Mail Fraud to Obtain Payment of Approximately $450,000 in Fraudulently Inflated Interest in Connection with the 57 East Main Street Realty Trust Loan**

On or about June 13, 2007, one or more of the defendants, including defendants LBM

Financial and Mallegni, having devised and intending to devise a scheme or artifice to defraud

and to obtain money or property by means of false and fraudulent pretenses, representations and

promises concerning material facts and matters, for the purpose of executing, attempting to

execute, and aiding and abetting the execution of, placed and caused to be placed in post offices

and authorized depositories for mail matter, matter and things to be sent by the United States

Postal Service or by private or commercial interstate carrier, and took and received therefrom,

such matter and things and knowingly caused to be delivered by the United States Postal Service

mail or by private or commercial interstate carrier according to the directions thereon such matter

and things, to wit: a letter in which defendant LBM Financial claimed to be owed approximately

$648,000 on the 57 East Main Street Realty Trust loan, in violation of 18 U.S.C. §1341;

k.    **Mail Fraud to Obtain Payment of over $48,000 in Usurious and Fraudulently Inflated Interest in Connection with the Lyman Development Loan**

On or about October 1, 2002, one or more of the defendants, including defendants

LBM Financial and Mallegni, having devised and intending to devise a scheme or artifice to

defraud and to obtain money or property by means of false and fraudulent pretenses,

representations and promises concerning material facts and matters, for the purpose of executing,

attempting to execute and aiding and abetting the execution of, placed and caused to be placed in

post offices and authorized depositories for mail matter, matter and things to be sent by the

United States Postal Service or by private or commercial interstate carrier, and took and received

therefrom, such matter and things and knowingly caused to be delivered by the United States

Postal Service mail or by private or commercial interstate carrier according to the directions

thereon such matter and things, to wit: a letter from defendant Norris on behalf of defendant

LBM Financial which contained the fraudulently inflated payoff amount for the loan, in violation

of 18 U.S.C. §1341;

l.  **Mail Fraud to Obtain Payment of Approximately $135,000 in Fraudulently Inflated
Interest in Connection with the Piccolo's Refinance**

In or around January 2005, one or more of the defendants, including defendants LBM

Financial and Mallegni, having devised and intending to devise a scheme or artifice to defraud

and to obtain money or property by means of false and fraudulent pretenses, representations and

promises concerning material facts and matters, for the purpose of executing, attempting to

execute, and aiding and abetting the execution of, placed and caused to be placed in post offices

and authorized depositories for mail matter, matter and things to be sent by the United States

Postal Service or by private or commercial interstate carrier, and took and received therefrom,

such matter and things and knowingly caused to be delivered by the United States Postal Service

mail or by private or commercial interstate carrier according to the directions thereon such matter

and things, to wit: a loan pay off letter from defendant LBM Financial and loan closing

documents from the Piccolo's refinance, in violation of 18 U.S.C. §1341;

m.  **Mail Fraud to Obtain Payment of Approximately $76,000 in Usurious and
Fraudulently Inflated Interest in Connection with the 230 Maple Street Loan**

In or around February 2005, one or more of the defendants, including defendants

LBM Financial, Norris and Mallegni, having devised and intending to devise a scheme or artifice

67

to defraud and to obtain money or property by means of false and fraudulent pretenses,

representations and promises concerning material facts and matters, for the purpose of executing,

attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in

post offices and authorized depositories for mail matter, matter and things to be sent by the

United States Postal Service or by private or commercial interstate carrier, and took and received

therefrom, such matter and things and knowingly caused to be delivered by the United States

Postal Service mail or by private or commercial interstate carrier according to the directions

thereon such matter and things, to wit: a letter from defendant Norris on behalf of defendant

LBM Financial which contained the fraudulently inflated payoff amount for the loan, in violation

of 18 U.S.C. §1341;

n.   **Mail Fraud to Collect Usurious and Fraudulently Inflated Interest Charges in Connection with the 230 Maple Street Loan**

On or about March 31, 2004, one or more of the defendants, including defendants

LBM Financial, Norris and Mallegni, having devised and intending to devise a scheme or artifice

to defraud and to obtain money or property by means of false and fraudulent pretenses,

representations and promises concerning material facts and matters, for the purpose of executing,

attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in

post offices and authorized depositories for mail matter, matter and things to be sent by the

United States Postal Service or by private or commercial interstate carrier, and took and received

therefrom, such matter and things and knowingly caused to be delivered by the United States

Postal Service mail or by private or commercial interstate carrier according to the directions

thereon such matter and things, to wit: a letter from defendant Norris on behalf of defendant

68

LBM Financial which attempted to secure payment of $22,000 in previously uncollected usurious

and fraudulently inflated interest which defendant LBM Financial claimed was due from the

closing of the 230 Maple Street loan, in violation of 18 U.S.C. §1341;

o.     **Mail Fraud in Connection with the Airline Lewis Loan**

On or about September 13, 2002, one or more of the defendants, including defendants

Massad, Pamela Massad and Gamewell, having devised and intending to devise a scheme or

artifice to defraud and to obtain money or property by means of false and fraudulent pretenses,

representations and promises concerning material facts and matters, for the purpose of executing,

attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in

post offices and authorized depositories for mail matter, matter and things to be sent by the

United States Postal Service or by private or commercial interstate carrier, and took and received

therefrom, such matter and things and knowingly caused to be delivered by the United States

Postal Service mail or by private or commercial interstate carrier according to the directions

thereon such matter and things, to wit: loan closing documents from the Airline Lewis Loan,

including the Loan Agreement, in violation of 18 U.S.C. §1341;

p.     **Mail Fraud in Connection with the Airline Lewis Loan**

In or around February 2003, one or more of the defendants, including defendants

Massad, Pamela Massad and Gamewell, having devised and intending to devise a scheme or

artifice to defraud and to obtain money or property by means of false and fraudulent pretenses,

representations and promises concerning material facts and matters, for the purpose of executing,

attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in

post offices and authorized depositories for mail matter, matter and things to be sent by the

United States Postal Service or by private or commercial interstate carrier, and took and received

therefrom, such matter and things and knowingly caused to be delivered by the United States

Postal Service mail or by private or commercial interstate carrier according to the directions

thereon such matter and things, to wit: a letter containing a usurious and fraudulently inflated

loan pay off amount for the Airline Lewis loan, in violation of 18 U.S.C. §1341;

q.      **Mail Fraud in Connection with the Airline Lewis Loan**

In or around September 2004, one or more of the defendants, including defendants

Massad, Pamela Massad and Gamewell, having devised and intending to devise a scheme or

artifice to defraud and to obtain money or property by means of false and fraudulent pretenses,

representations and promises concerning material facts and matters, for the purpose of executing,

attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in

post offices and authorized depositories for mail matter, matter and things to be sent by the

United States Postal Service or by private or commercial interstate carrier, and took and received

therefrom, such matter and things and knowingly caused to be delivered by the United States

Postal Service mail or by private or commercial interstate carrier according to the directions

thereon such matter and things, to wit: a letter containing a usurious and fraudulently inflated

loan pay off amount for the Airline Lewis loan, in violation of 18 U.S.C. §1341;

r.      **Mail Fraud in Connection with the Airline Lewis Loan**

On or about May 3, 2006, one or more of the defendants, including defendants

Massad, Pamela Massad and Gamewell, having devised and intending to devise a scheme or

artifice to defraud and to obtain money or property by means of false and fraudulent pretenses,

representations and promises concerning material facts and matters, for the purpose of executing,

70

attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in

post offices and authorized depositories for mail matter, matter and things to be sent by the

United States Postal Service or by private or commercial interstate carrier, and took and received

therefrom, such matter and things and knowingly caused to be delivered by the United States

Postal Service mail or by private or commercial interstate carrier according to the directions

thereon such matter and things, to wit: a letter from Pamela Massad to Fiorillo and Shrewsbury

Street Development demanding an immediate payment of over $931,000 to defendant Gamewell

in connection with the Airline Lewis loan, in violation of 18 U.S.C. §1341;

s.     **Extortion to Obtain the Airline Lewis Deed**

In or around February 2006, one or more of the defendants, including defendant

Massad, did attempt, and aid and abet in the attempt to obtain property from Fiorillo by wrongful

use of actual or threatened force, violence, or fear, including fear of economic loss as well as of

physical harm, and by such acts attempted to obtain property (to wit, the deed to the Airline

Lewis Property) to which they were not lawfully entitled and, in so doing, affected commerce, in

violation of 18 U.S.C. §1951 and M.G.L. c.275 §25;

t.     **Loan Sharking to Obtain the Airline Lewis Deed**

In or around February, 2006, one or more of the defendants, including defendant

Massad, did participate, aid and abet the participation of, and conspired to participate in the use

of extortionate means to collect an extension of credit, specifically the receipt of a deed in lieu of

payment of the Airline Lewis loan from Fiorillo, in violation of 18 U.S.C. §894;

u.      **Mail Fraud in Connection with the Wolfpen Loan to 219 Forest**

In or around September 1999, one or more of the defendants, including defendants

Mallegni and Wolfpen, having devised and intending to devise a scheme or artifice to defraud

and to obtain money or property by means of false and fraudulent pretenses, representations and

promises concerning material facts and matters, for the purpose of executing, attempting to

execute, and aiding and abetting the execution of, placed and caused to be placed in post offices

and authorized depositories for mail matter, matter and things to be sent by the United States

Postal Service or by private or commercial interstate carrier, and took and received therefrom,

such matter and things and knowingly caused to be delivered by the United States Postal Service

mail or by private or commercial interstate carrier according to the directions thereon such matter

and things, to wit: documents in connection with the signing of the Wolfpen Note, in violation of

18 U.S.C. §1341;

v.      **Mail Fraud in Connection with the Commerce Bank Loan to 219 Forest and the
        March Note from 219 Forest to Defendant LBM Financial**

On or about March 20, 2001, one or more of the defendants, including defendants

Mallegni, Wolfpen, LBM Financial, Commerce Bank and Massad, having devised and intending

to devise a scheme or artifice to defraud and to obtain money or property by means of false and

fraudulent pretenses, representations and promises concerning material facts and matters, for the

purpose of executing, attempting to execute, and aiding and abetting the execution of, placed and

caused to be placed in post offices and authorized depositories for mail matter, matter and things

to be sent by the United States Postal Service or by private or commercial interstate carrier, and

took and received therefrom, such matter and things and knowingly caused to be delivered by the

72

United States Postal Service mail or by private or commercial interstate carrier according to the directions thereon such matter and things, to wit: documents relating to the closing of the Commerce Bank loan and the execution of the March Note, in violation of 18 U.S.C. §1341;

w.   **Mail Fraud in Connection with the Making of the December Note from 219 Forest to Defendant LBM Financial**

On or about December 31, 2002, one or more of the defendants, including defendants Mallegni, LBM Financial, Commerce Bank and Massad, having devised and intending to devise a scheme or artifice to defraud and to obtain money or property by means of false and fraudulent pretenses, representations and promises concerning material facts and matters, for the purpose of executing, attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in post offices and authorized depositories for mail matter, matter and things to be sent by the United States Postal Service or by private or commercial interstate carrier, and took and received therefrom, such matter and things and knowingly caused to be delivered by the United States Postal Service mail or by private or commercial interstate carrier according to the directions thereon such matter and things, to wit: documents relating to the payoff of the Commerce Bank loan and the execution of the December Note to defendant LBM Financial, in violation of 18 U.S.C. §1341;

x.   **Mail Fraud in Connection with the Proposed Extension of the December Note**

On or about March 31, 2004, one or more of the defendants, including defendants Mallegni, Norris and LBM Financial, having devised and intending to devise a scheme or artifice to defraud and to obtain money or property by means of false and fraudulent pretenses, representations and promises concerning material facts and matters, for the purpose of executing,

73

attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in

post offices and authorized depositories for mail matter, matter and things to be sent by the

United States Postal Service or by private or commercial interstate carrier, and took and received

therefrom, such matter and things and knowingly caused to be delivered by the United States

Postal Service mail or by private or commercial interstate carrier according to the directions

thereon such matter and things, to wit: a letter from defendant Norris to Depietri and 219 Forest

outlining the conditions under which defendants Mallegni and LBM Financial would extend the

December Note, in violation of 18 U.S.C. §1341;

y.    **Mail Fraud in Connection with the Assignment of the December Note to Danversbank**

In or around November 2005, one or more of the defendants, including defendants

Mallegni, LBM Financial, and Massad, having devised and intending to devise a scheme or

artifice to defraud and to obtain money or property by means of false and fraudulent pretenses,

representations and promises concerning material facts and matters, for the purpose of executing,

attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in

post offices and authorized depositories for mail matter, matter and things to be sent by the

United States Postal Service or by private or commercial interstate carrier, and took and received

therefrom, such matter and things and knowingly caused to be delivered by the United States

Postal Service mail or by private or commercial interstate carrier according to the directions

thereon such matter and things, to wit: documents in connection with the Assignment of the

December Note to Danversbank, which assignment was done without notice to the plaintiffs, nor

the consent of defendant LBM Financial's investors, in violation of 18 U.S.C. §1341;

74

z.      **Mail Fraud in Connection with the Collection of the December and March Notes**

On or about February 20, 2007, one or more of the defendants, including defendants

Mallegni, and LBM Financial, having devised and intending to devise a scheme or artifice to

defraud and to obtain money or property by means of false and fraudulent pretenses,

representations and promises concerning material facts and matters, for the purpose of executing,

attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in

post offices and authorized depositories for mail matter, matter and things to be sent by the

United States Postal Service or by private or commercial interstate carrier, and took and received

therefrom, such matter and things and knowingly caused to be delivered by the United States

Postal Service mail or by private or commercial interstate carrier according to the directions

thereon such matter and things, to wit: a demand notice to 219 Forest demanding the full and

immediate payment of the March and December Notes, including approximately $3 million in

fraudulently inflated interest charges, in violation of 18 U.S.C. §1341;

aa.      **Bankruptcy Fraud in Connection with the Bankruptcy of 219 and 201 Forest**

On or about May 25, 2007, in connection with a case filed under title 11 by 219

Forest and 201 Forest, one or more of the defendants, including defendants Mallegni, and LBM

Financial, presented a false claim for proof against the estate of a debtor, 219 Forest and 201

Forest, and did aid and abet the presentation of such a false claim, to wit: defendants filed and

caused to be filed a proof of claim seeking to recover $5,003,243.28 on the March and December

Notes, in violation of 18 U.S.C. §152;

75

bb.   **Bank Fraud in Connection with the Assignment of the December Note to Danversbank**

On or about November 30, 2005, one or more of the defendants, including defendants Mallegni, Massad and LBM Financial, executed, attempted to execute, and aided and abetted in the execution of, a scheme and artifice to defraud Danversbank and to obtain monies, funds, credits, assets, securities and other property owned by, or under the custody and control of Danversbank by means of false and fraudulent pretenses, representations and promises in that defendant Mallegni made an unauthorized assignment of the December Note to Danversbank as collateral for another loan in New Hampshire with which defendants Mallegni and Massad were involved, in violation of 18 U.S.C. §1344;

cc.   **Extortion to Obtain the Wolfpen Note**

In or around September 1999, one or more of the defendants, including defendants Mallegni, Wolfpen and LBM Financial, did attempt, and aid and abet in the attempt, to obtain property from 219 Forest by wrongful use of actual or threatened force, violence, or fear, including fear of economic loss as well as of physical harm, and by such acts attempted to obtain property to which they were not lawfully entitled, to wit: the Wolfpen Note, and, in so doing, affected commerce, in violation of 18 U.S.C. §1951 and M.G.L. c.275 §25;

dd.   **Extortion to Obtain an Assignment of $202,271 from Plaintiff Depietri and His Brother to Defendants LBM Financial and Mallegni**

On or about March 20, 2001, one or more of the defendants, including defendants Mallegni, LBM Financial, Commerce Bank and Massad, did attempt, and aid and abet in the attempt, to obtain property from 219 Forest by wrongful use of actual or threatened force, violence, or fear, including fear of economic loss as well as of physical harm, and by such acts

76

attempted to obtain property to which they were not lawfully entitled, to wit: an assignment of

$202,271 from plaintiff Depietri and his brother to defendants Mallegni and LBM Financial, in

violation of 18 U.S.C. §1951 and M.G.L. c.275 §25;

ee.   **Extortion to Grant Defendant Mallegni 40% Ownership Interest in 219 Forest**

On or about March 20, 2001, one or more of the defendants, including defendants

Mallegni, LBM Financial, Commerce Bank and Massad, did attempt, and aid and abet in the

attempt, to obtain property from 219 Forest by wrongful use of actual or threatened force,

violence, or fear, including fear of economic loss as well as of physical harm, and by such acts

attempted to obtain property to which they were not lawfully entitled, to wit: granting a 40%

ownership interest in 219 Forest to defendant Mallegni, in violation of 18 U.S.C. §1951 and

M.G.L. c.275 §25;

ff.   **Extortion to Obtain an Extension of the December Note**

On or about January 30, 2004, one or more of the defendants, including

defendants Mallegni, Norris and LBM Financial, did attempt, and aid and abet in the attempt, to

obtain property from 219 Forest and Depietri by wrongful use of actual or threatened force,

violence, or fear, including fear of economic loss as well as of physical harm, and by such acts

attempted to obtain property to which they were not lawfully entitled, to wit: a release of

defendant Norris from his lease obligations to the Boston Post Road Trust, in violation of 18

U.S.C. §1951 and M.G.L. c.275 §25;

gg.   **Extortion to Obtain an Extension of the December Note**

On or about March 31, 2004, one or more of the defendants, including defendants

Mallegni, Norris and LBM Financial, did attempt, and aid and abet in the attempt, to obtain

77

property from 219 Forest and Depietri by wrongful use of actual or threatened force, violence, or

fear, including fear of economic loss as well as of physical harm, and by such acts attempted to

obtain property to which they were not lawfully entitled, to wit: a release of defendant Norris

from his lease obligations to the Boston Post Road Trust, in violation of 18 U.S.C. §1951 and

M.G.L. c.275 §25;

hh.   **Mail Fraud in Connection with the 249 Lincoln Street Loan**

On or about May 3, 2005, one or more of the defendants, including defendants

Mallegni, Norris, and LBM Financial, having devised and intending to devise a scheme or

artifice to defraud and to obtain money or property by means of false and fraudulent pretenses,

representations and promises concerning material facts and matters, for the purpose of executing,

attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in

post offices and authorized depositories for mail matter, matter and things to be sent by the

United States Postal Service or by private or commercial interstate carrier, and took and received

therefrom, such matter and things and knowingly caused to be delivered by the United States

Postal Service mail or by private or commercial interstate carrier according to the directions

thereon such matter and things, to wit: documents in connection with the closing of the 249

Lincoln Street loan, in violation of 18 U.S.C. §1341;

ii.   **Extortion In Connection with the 249 Lincoln Street Loan**

On or about May 3, 2005, one or more of the defendants, including defendants

Mallegni, Norris and LBM Financial, did attempt, and aid and abet in the attempt, to obtain

property from Fiorillo, Krowel and SSDC by wrongful use of actual or threatened force,

violence, or fear, including fear of economic loss as well as of physical harm, and by such acts

78

attempted to obtain property to which they were not lawfully entitled, to wit: granting a 25% ownership interest in property located at 157 Shrewsbury Street to defendant Mallegni, in violation of 18 U.S.C. §1951 and M.G.L. c.275 §25;

jj.   **Mail Fraud in Connection with the Evergrass Loan**

On or about April 19, 2005, one or more of the defendants, including defendants Mallegni, Norris, and LBM Financial, having devised and intending to devise a scheme or artifice to defraud and to obtain money or property by means of false and fraudulent pretenses, representations and promises concerning material facts and matters, for the purpose of executing, attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in post offices and authorized depositories for mail matter, matter and things to be sent by the United States Postal Service or by private or commercial interstate carrier, and took and received therefrom, such matter and things and knowingly caused to be delivered by the United States Postal Service mail or by private or commercial interstate carrier according to the directions thereon such matter and things, to wit: documents in connection with the closing of the Evergrass Loan, including the HUD-1 Settlement Statement, in violation of 18 U.S.C. §1341;

kk.   **Extortion In Connection with the Second Evergrass Loan**

On or about August 29, 2005, one or more of the defendants, including defendants Mallegni, Norris and LBM Financial, did attempt, and aid and abet in the attempt, to obtain property from the Depietris by wrongful use of actual or threatened force, violence, or fear, including fear of economic loss as well as of physical harm, and by such acts attempted to obtain property to which they were not lawfully entitled, to wit: granting defendant LBM Financial a

second mortgage on the Depietris' family home, in violation of 18 U.S.C. §1951 and M.G.L.

c.275 §25;

ll.     **Mail Fraud in Connection with the Chase Loan**

        In or around September 2000, one or more of the defendants, including defendants

Massad, Pamela Massad, Mallegni and Commerce Bank, having devised and intending to devise

a scheme or artifice to defraud and to obtain money or property by means of false and fraudulent

pretenses, representations and promises concerning material facts and matters, for the purpose of

executing, attempting to execute, and aiding and abetting the execution of, placed and caused to

be placed in post offices and authorized depositories for mail matter, matter and things to be sent

by the United States Postal Service or by private or commercial interstate carrier, and took and

received therefrom, such matter and things and knowingly caused to be delivered by the United

States Postal Service mail or by private or commercial interstate carrier according to the

directions thereon such matter and things, to wit: documents produced in connection with the

closing of the Chase Loan, including the HUD-1 Settlement Statement, in violation of 18 U.S.C.

§1341;

mm.     **Extortion In Connection with the Chase Loan**

        In or around September 2000, one or more of the defendants, including defendants

Massad, Pamela Massad, Mallegni, and Commerce Bank, did attempt, and aid and abet in the

attempt, to obtain property from Chase Building Associates by wrongful use of actual or

threatened force, violence, or fear, including fear of economic loss as well as of physical harm,

and by such acts attempted to obtain property to which they were not lawfully entitled, to wit: the

payment of $30,000 in "broker's fees" to defendant Massad's associates, in violation of 18

U.S.C. §1951 and M.G.L. c.275 §25;

nn.    **Mail Fraud in Connection with the Stafford Hill Estates Project**

On or about May 20, 2004, one or more of the defendants, including defendants

Massad, Mallegni, LBM Financial and Commerce Bank, having devised and intending to devise

a scheme or artifice to defraud and to obtain money or property by means of false and fraudulent

pretenses, representations and promises concerning material facts and matters, for the purpose of

executing, attempting to execute, and aiding and abetting the execution of, placed and caused to

be placed in post offices and authorized depositories for mail matter, matter and things to be sent

by the United States Postal Service or by private or commercial interstate carrier, and took and

received therefrom, such matter and things and knowingly caused to be delivered by the United

States Postal Service mail or by private or commercial interstate carrier according to the

directions thereon such matter and things, to wit: a commitment letter from LBM Financial to

Fiorillo, in violation of 18 U.S.C. §1341;

oo.    **Mail Fraud in Connection with the Manzi Parcels Loan**

On or about August 17, 2005, one or more of the defendants, including defendants

Massad, Mallegni, and LBM Financial, having devised and intending to devise a scheme or

artifice to defraud and to obtain money or property by means of false and fraudulent pretenses,

representations and promises concerning material facts and matters, for the purpose of executing,

attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in

post offices and authorized depositories for mail matter, matter and things to be sent by the

United States Postal Service or by private or commercial interstate carrier, and took and received

81

therefrom, such matter and things and knowingly caused to be delivered by the United States

Postal Service mail or by private or commercial interstate carrier according to the directions

thereon such matter and things, to wit: loan closing documents relating to the purchase of the

Manzi Parcels, in violation of 18 U.S.C. §1341;

pp.      **Mail Fraud in Connection with the 88 Shrewsbury Street Loan**

On or about December 16, 2004, one or more of the defendants, including defendants

Mallegni, Norris, and LBM Financial, having devised and intending to devise a scheme or

artifice to defraud and to obtain money or property by means of false and fraudulent pretenses,

representations and promises concerning material facts and matters, for the purpose of executing,

attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in

post offices and authorized depositories for mail matter, matter and things to be sent by the

United States Postal Service or by private or commercial interstate carrier, and took and received

therefrom, such matter and things and knowingly caused to be delivered by the United States

Postal Service mail or by private or commercial interstate carrier according to the directions

thereon such matter and things, to wit: loan closing documents relating to the purchase of 88

Shrewsbury Street by SSI, in violation of 18 U.S.C. §1341;

qq.      **Mail Fraud in Connection with the 7-21 Erie Avenue Loan**

On or about November 14, 2005, one or more of the defendants, including defendants

Massad, Mallegni, Norris and LBM Financial, having devised and intending to devise a scheme

or artifice to defraud and to obtain money or property by means of false and fraudulent pretenses,

representations and promises concerning material facts and matters, for the purpose of executing,

attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in

82

post offices and authorized depositories for mail matter, matter and things to be sent by the

United States Postal Service or by private or commercial interstate carrier, and took and received

therefrom, such matter and things and knowingly caused to be delivered by the United States

Postal Service mail or by private or commercial interstate carrier according to the directions

thereon such matter and things, to wit: documents produced in connection with the closing of the

7-21 Erie Avenue Loan, in violation of 18 U.S.C. §1341;

rr.    **Extortion In Connection with the 7-21 Erie Avenue Loan**

On or about November 14, 2005, one or more of the defendants, including

defendants Massad, Mallegni, Norris and LBM Financial, did attempt, and aid and abet in the

attempt, to obtain property from Fiorillo and the Erie Avenue Residential Trust by wrongful use

of actual or threatened force, violence, or fear, including fear of economic loss as well as of

physical harm, and by such acts attempted to obtain property to which they were not lawfully

entitled, to wit: a $1,010,000 second mortgage to defendant LBM Financial secured by several

properties owned by Fiorillo, including his family home on 425B Salisbury Street, Worcester,

Massachusetts, in violation of 18 U.S.C. §1951 and M.G.L. c.275 §25;

ss.    **Extortion In Connection with Prior Pending Cases**

At various times, from June 1, 2006, through the date of this Amended

Complaint, including, but not limited to March 1, 2007, one or more of the defendants, including

defendants Massad, Pamela Massad, Commerce Bank, and Gamewell, did attempt, and aid and

abet in the attempt, to obtain property from the Fiorillos and SSDC by wrongful use of actual or

threatened force, violence, or fear, including fear of economic loss as well as of physical harm,

and by such acts attempted to obtain property to which they were not lawfully entitled, to wit:

83

relinquishment of choses in action, including state and federal lawsuits regarding the illegal

actions of the defendants, in violation of 18 U.S.C. §1951 and M.G.L. c.275 §25;

tt.      **Extortion In Connection with Prior Pending Cases**

        At various times, from June 1, 2006, through the date of this Amended

Complaint, including, but not limited to April 18, 2007, one or more of the defendants, including

defendants Massad, Pamela Massad, Commerce Bank, and Gamewell, did attempt, and aid and

abet in the attempt, to obtain property from the Fiorillos and SSDC by wrongful use of actual or

threatened force, violence, or fear, including fear of economic loss as well as of physical harm,

and by such acts attempted to obtain property to which they were not lawfully entitled, to wit:

relinquishment of choses in action, including state and federal lawsuits regarding the illegal

actions of the defendants, in violation of 18 U.S.C. §1951 and M.G.L. c.275 §25;

uu.      **Obstruction of Justice in Connection with Prior Pending Cases**

        At various times between June 2006 and the date of this Amended Complaint,

including, but not limited to in or around July 2006, one or more of the defendants, including

defendants Massad, Mallegni, and LBM Financial did knowingly use intimidation, threaten, and

corruptly persuade and did attempt to knowingly use intimidation, threaten, and corruptly

persuade plaintiff Depietri with the intent to influence, delay and prevent his testimony in an

official proceeding, and did aid and abet the same, and did cause and attempt to cause plaintiff

Depietri to withhold his testimony in an official proceeding, to wit: the Fiorillos' various state

lawsuits against the defendants and others, all in violation of 18 U.S.C. §1512(b).

vv.   **Obstruction of Justice in Connection with Prior Pending Cases**

At various times between June 2006 and the date of this Amended Complaint, including, but not limited to July 17, 2006, one or more of the defendants, including defendants Massad, Mallegni, and LBM Financial did knowingly use intimidation, threaten, and corruptly persuade and did attempt to knowingly use intimidation, threaten, and corruptly persuade plaintiff Depietri with the intent to influence, delay and prevent his testimony in an official proceeding, and did aid and abet the same, and did cause and attempt to cause plaintiff Depietri to withhold his testimony in an official proceeding, to wit: the Fiorillos' various state lawsuits against the defendants and others, all in violation of 18 U.S.C. §1512(b).

ww.   **Obstruction of Justice in Connection with Prior Pending Cases**

At various times between June 2006 and the date of this Amended Complaint, including, but not limited to January 18, 2007, one or more of the defendants, including defendants Massad, Mallegni, Commerce Bank, and LBM Financial did knowingly use intimidation, threaten, and corruptly persuade and did attempt to knowingly use intimidation, threaten, and corruptly persuade plaintiff Depietri with the intent to influence, delay and prevent his testimony in an official proceeding, and did aid and abet the same, and did cause and attempt to cause plaintiff Depietri to withhold his testimony in an official proceeding, to wit: the Fiorillos' various state and federal lawsuits against the defendants and others, all in violation of 18 U.S.C. §1512(b).

xx.   **Obstruction of Justice in Connection with Prior Pending Cases**

At various times between June 2006 and the date of this Amended Complaint, including, but not limited to October 18, 2007, one or more of the defendants, including

85

defendants Massad, Mallegni, Commerce Bank, and LBM Financial did knowingly use

intimidation, threaten, and corruptly persuade and did attempt to knowingly use intimidation,

threaten, and corruptly persuade plaintiff Depietri with the intent to influence, delay and prevent

his testimony in an official proceeding, and did aid and abet the same, and did cause and attempt

to cause plaintiff Depietri to withhold his testimony in an official proceeding, to wit: the

Fiorillos' various state and federal lawsuits against the defendants and others, and the Depietris

own federal lawsuit against the defendants, all in violation of 18 U.S.C. §1512(b).

236.    On information and belief, the individual defendants each, jointly and severally have re-

invested the proceeds of their racketeering in said Commerce Bank, LBM Financial,

Gamewell, Wolfpen, and the Massad Enterprise.

237.    Said pattern of racketeering activity caused great damage to the plaintiffs, including, but

not limited to, losses in excess of approximately $60 million.

238.    Moreover, it appears that such activity is persistent and ongoing. The intervention of the

Honorable Court is necessary to deter future racketeering activity.

### COUNT II: CIVIL RICO CONSPIRACY (18 U.S.C. §§1962(d), 1964(c))

239.    The plaintiffs repeat and reiterate each and every allegation set forth above and

incorporate such allegations into this count.

240.    The members of the Massad Enterprise, as above defined, did unlawfully agree and

conspire together to perform the illegal acts set forth above in violation of 18 U.S.C.

§1962(d).

241.    Their conduct constituted an ongoing criminal conspiracy.

242.    Said RICO conspiracy caused great damage to the plaintiffs, including, but not limited to

losses in excess of approximately $60 million.

## COUNT III:  BREACH OF CONTRACT v. LBM: EVERGRASS

243.    The plaintiffs repeat and reiterate each and every allegation set forth above and incorporate such allegations into this count.

244.    The defendant and Evergrass entered into a binding contract which contract included an implied obligation of good faith and fair dealing.

245.    By its conduct set forth above, the defendant breached said contract without excuse or right.

246.    Said breach of contract caused great damage to the plaintiffs, including, but not limited to economic losses.

## COUNT IV:  BREACH OF CONTRACT v. LBM FINANCIAL: 7-12 ERIE AVENUE

247.    The plaintiffs repeat and reiterate each and every allegation set forth above and incorporate such allegations into this count.

248.    The defendant and Erie Avenue Realty Trust entered into a binding contract which contract included an implied obligation of good faith and fair dealing.

249.    By its conduct set forth above, the defendant breached said contract without excuse or right.

250.    Said breach of contract caused great damage to the plaintiffs, including, but not limited to economic losses.

## COUNT V:  BREACH OF CONTRACT v. GAMEWELL: AIRLINE LEWIS LOAN

251.    The plaintiffs repeat and reiterate each and every allegation set forth above and incorporate such allegations into this count.

87

252.   The defendant and plaintiffs SSDC and Fiorillo entered into a binding contract, which contract included an implied obligation of good faith and fair dealing.

253.   By its conduct set forth above, the defendant breached said contract without excuse or right.

254.   Said breach of contract caused great damage to the plaintiff, including, but not limited to, economic loss.[1]

## COUNT VI:   BREACH OF CONTRACT v. LBM FINANCIAL: 249 LINCOLN STREET

255.   The plaintiffs repeat and reiterate each and every allegation set forth above and incorporate such allegations into this count.

256.   The defendant and plaintiffs Fiorillo and Krowell entered into a binding contract, which contract included an implied obligation of good faith and fair dealing.

257.   By its conduct set forth above, the defendant breached said contract without excuse or right.

258.   Said breach of contract caused great damage to the plaintiff, including, but not limited to, economic loss.

## COUNT VII: BREACH OF CONTRACT v. COMMERCE BANK: 425 B SALISBURY STREET

259.   The plaintiffs repeat and reiterate each and every allegation set forth above and incorporate such allegations into this count.

260.   The defendant and plaintiffs entered into a binding contract which contract included an implied obligation of good faith and fair dealing.

261.   By its conduct set forth above, the defendant breached said contract without excuse or

right.

262.    Said breach of contract caused great damage to the plaintiffs, including, but not limited to, economic loss.

## COUNT VIII: INTENTIONAL INTERFERENCE WITH CONTRACTS v. DAVID MASSAD: 425 B SALISBURY STREET

263.    The plaintiffs repeat and reiterate each and every allegation set forth above and incorporate such allegations into this count.

264.    The individual defendant David Massad controlled the corporate defendant Commerce Bank.

265.    There was an express contract between the corporate defendant Commerce Bank, Inc. and the Fiorillos.

266.    The individual defendant David Massad was aware of the express contract between the corporate defendant Commerce Bank and the Fiorillos.

267.    The individual defendant David Massad interfered with the express contract between the corporate defendant Commerce Bank and the plaintiffs, and induced and caused the corporate defendant Commerce Bank to breach its contract with the plaintiffs.  Said wrongful interference was without right or justification.

268.    Said tortuous and wrongful interference caused the plaintiffs to suffer great damage, including, but not limited to, economic loss.

## COUNT IX: INTENTIONAL INTERFERENCE WITH CONTRACTS v. DAVID and PAMELA MASSAD: AIRLINE LEWIS LOAN

269.    The plaintiffs repeat and reiterate each and every allegation set forth above and

---

1 Plaintiffs acknowledge and are aware that a similar claim was dismissed via summary judgment in state court.

incorporate such allegations into this count.

270.    The individual defendants Pamela and David Massad controlled the corporate defendant Gamewell.

271.    There was an express contract between the corporate defendant Gamewell and the plaintiffs, SSDC and Fiorillo.

272.    The individual defendants Pamela and David Massad were aware of the express contract between the corporate defendant Gamewell and the plaintiffs.

273.    The individual defendants Pamela and David Massad interfered with the express contract between the corporate defendant Gamewell and the plaintiffs, and induced and caused the corporate defendant Gamewell to breach its contract with the plaintiffs.  Said wrongful interference was without right or justification.

274.    Said tortuous and wrongful interference caused the plaintiffs to suffer great damage, including, but not limited to, economic loss.

### COUNT X: INTENTIONAL INTERFERENCE WITH CONTRACTS v. DAVID MASSAD and MARCELLO MALLEGNI: STAFFORD POND ESTATES

275.    The plaintiffs repeat and reiterate each and every allegation set forth above and incorporate such allegations into this count.

276.    The individual defendants Marcello Mallegni and David Massad controlled the corporate defendant LBM Financial.

277.    There was an express contract between the corporate defendant LBM Financial and plaintiff Fiorillo.

278.    The individual defendants Mallegni and Massad were aware of the express contract

90

between the corporate defendant LBM Financial and the plaintiff.

279.   The individual defendants Mallegni and Massad interfered with the express contract

between the corporate defendant LBM Financial and the plaintiff, and induced and caused the

corporate defendant LBM Financial to breach its contract with the plaintiff.  Said wrongful

interference was without right or justification.

280.   Said tortuous and wrongful interference caused the plaintiff to suffer great damage,

including, but not limited to, economic loss.

## COUNT XI: INTENTIONAL INTERFERENCE WITH CONTRACTS v. MARCELLO MALLEGNI: 7-21 ERIE AVENUE LOANS

281.   The plaintiffs repeat and reiterate each and every allegation set forth above and

incorporate such allegations into this count.

282.   The individual defendant Marcello Mallegni controlled the corporate defendant LBM

Financial.

283.   There was an express contract between the corporate defendant LBM Financial and Erie

Avenue Realty Trust, of which plaintiffs Depietri and Fiorillo were 100% owners.

284.   The individual defendant Mallegni was aware of the express contract between the

corporate defendant LBM Financial and the Erie Avenue Trust.

285.   The individual defendant Mallegni interfered with the express contract between the

corporate defendant LBM Financial and the Erie Avenue Trust, and induced and caused the

corporate defendant LBM Financial to breach its contract with the Trust.  Said wrongful

interference was without right or justification.

286.   Said tortuous and wrongful interference caused the plaintiffs to suffer great damage

91

including, but not limited to, economic loss.

## COUNT XII: INTENTIONAL INTERFERENCE WITH CONTRACTS v. MARCELLO MALLEGNI AND MICHAEL NORRIS: EVERGRASS

287.    The plaintiffs repeat and reiterate each and every allegation set forth above and incorporate such allegations into this count.

288.    The individual defendant Marcello Mallegni controlled the corporate defendant LBM Financial.

289.    The individual defendant Michael Norris had substantial influence upon the corporate defendant LBM Financial and represented it at the closing of the two Evergrass loans.

290.    There were express contracts between the corporate defendant LBM Financial, Evergrass and the Plaintiffs regarding the Evergrass loans.

291.    The individual defendants Marcello Mallegni and Michael Norris knew of the express contracts between the corporate defendant LBM Financial, Evergrass and the plaintiffs.

292.    The individual defendants Marcello Mallegni and Michael Norris interfered with the express contracts between the corporate defendant LBM Financial, Evergrass and the plaintiffs, and induced and caused the corporate defendant LBM Financial to breach its contract with Evergrass and the plaintiffs.  Said wrongful interference was without right or justification.

293.    Said tortuous and wrongful interference caused the plaintiffs to suffer great damage, including, but not limited to economic losses.

## COUNT XIII: MISREPRESENTATION/PROMISSORY ESTOPPEL

294.    The plaintiffs repeat and reiterate each and every allegation set forth above and

incorporate such allegations into this count.

295.    The defendants Massad, Pamela Massad, Mallegni, Commerce Bank, Gamewell, LBM

Financial, Wolfpen and Norris jointly and severally made material representations to

plaintiffs to cause them to part with substantial sums.

296.    Plaintiffs tendered substantial sums of money to defendants Massad, Pamela Massad,

Gamewell, Commerce Bank, LBM Financial, Wolfpen and Mallegni, and Norris.

297.    These representations were false or made with reckless disregard for the truth, or with

negligent disregard for truth and with the intention of benefitting themselves in a manner

contrary to law.

298.    Plaintiffs relied to their detriment upon the false and fraudulent representations made

directly to them, by tendering to defendants Massad, Pamela Massad, Mallegni, LBM

Financial, Gamewell, Commerce Bank, Wolfpen and Norris, jointly and severally, millions of

dollars.

299.    By said detrimental reliance, plaintiffs were greatly damaged, including, but not limited to

economic losses.

## COUNT XIV: UNFAIR AND DECEPTIVE PRACTICES IN VIOLATION OF G.L. C.93A SEC. 11 - ALL DEFENDANTS

300.    The plaintiffs repeat and reiterate each and every allegation set forth above and

incorporate such allegations into this count.

301.    The defendants each do business within the Commonwealth of Massachusetts.

302.    The manner and means described above in which all defendants attempted to collect a

civil debt were unfair and deceptive as defined in G.L. c. 93A §11.

303.   As a result of the Defendants' unfair and deceptive collection practices, the Plaintiffs

suffered in business, in their personal and professional reputations, suffered emotional

distress and were otherwise damaged, including, but not limited to losses in excess of

approximately $90 million.

## COUNT XV: CONVERSION

304.   The plaintiffs repeat and reiterate each and every allegation set forth above and

incorporate such allegations into this count.

305.   The defendants Norris and Mallegni from time to time converted funds rightfully

belonging to the plaintiffs.

306.   Said illegal conversion caused the plaintiffs great damage, including, but not limited to

economic losses.

## COUNT XVI: CONVERSION

307.   The plaintiffs repeat and reiterate each and every allegation set forth above and

incorporate such allegations into this count.

308.   The defendants Pamela Massad and David Massad from time to time converted funds

rightfully belonging to the plaintiffs.

309.   Said illegal conversion caused the plaintiffs great damage, including, but not limited to

economic losses.

## JURY DEMAND

The Plaintiffs respectfully request a trial by jury to the greatest extent allowed by law.

94

6.    Assess against each defendant such further relief as is mete and just.


Dated: November 20, 2007                              Respectfully submitted,

                                                      NICHOLAS J. FIORILLO, TRACY
                                                      KROWEL, ROBERT J. DEPIETRI, JR.,
                                                      KIMBRLY DEPIETRI, SHREWSBURY
                                                      STREET DEVELOPMENT COMPANIES,
                                                      INC., ERIE AVENUE RESIDENTIAL
                                                      REALTY TRUST
                                                      Plaintiffs,

                                                      By their attorneys,

                                                      */s/ Paul J. Andrews*
                                                      Jeffrey A. Denner, BBO #120520
                                                      Robert S. Sinsheimer, BBO#464940
                                                      Paul J. Andrews, BBO#558574
                                                      Raipher D. Pellegrino, BBO#560614
                                                      DENNER♦PELLEGRINO, LLP
                                                      Four Longfellow Place, 35th Floor
                                                      Boston, MA 02114



96